MARY J. WILLIFORD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Williford v. Commissioner
Docket No. 3763-72.
United States Tax Court
T.C. Memo 1975-65; 1975 Tax Ct. Memo LEXIS 304; 34 T.C.M. (CCH) 354; T.C.M. (RIA) 750065; March 19, 1975, Filed Mary J. Williford, pro se. Randall G. Dick, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent has determined a deficiency of $631.62 in petitioner's income tax for 1968. The only issue for our decision is whether or not petitioner was entitled to deduct as a bad debt loss that amount of child-support payments which her ex-spouse failed *305 to make to her in 1968 as required by their separation agreement. Since 1965, Williford has not resided in the United States, and during 1968 he made no child-support payments to petitioner. Petitioner's minor child's support during such year was provided for entirely by petitioner from her own funds. On her 1968 Federal income tax return, petitioner claimed a $3,000 deduction for "Loss incurred in Property Settlement filed in Superior Court, State of Calif. County Marin. Case #37103." Such $3,000 represents the amount of child support (excluding the amounts Williford was required to pay to the Bank of America) which Williford was supposed to pay to petitioner during 1968 pursuant to the 1964 support agreement, and which he did not in fact pay to her. In his statutory notice of deficiency, respondent disallowed such deduction in full. At trial, and in her brief, petitioner made it clear that she was claiming the above-mentioned deduction as a bad debt loss under section 166. [1]
OPINION For a taxpayer to become entitled to deduct a bad debt under section 166, he must show *306 that there in fact existed a valid and enforceable debt during the taxable year possessing a tax basis, and that such debt became worthless before the Some of the facts have been stipulated and are so found. Petitioner Mary Jean Williford (petitioner) was a resident of Vacaville, California, on the date she filed the petition herein. She filed her 1968 Federal income tax return with the district director of internal revenue, San Francisco, California. On October 28, 1960, petitioner married John Williford (Williford). The couple separated on August 10, 1962, and a final decree of divorce was entered sometime in 1964. In connection with the divorce, the couple signed a property settlement and support agreement dated January 30, 1964. The pertinent provisions of such document for purposes of the instant case are as follows: Husband shall, in fulfillment of his statutory obligation arising from the marital relationship, pay to wife, as and for her support and maintenance, and as alimony, the sum of $1.00 per year * * * * * Husband shall pay to wife, as and for the support, maintenance and care of said minor child the sum of $250.00 per month * * * * * In addition *307 to the foregoing and as a further provision for the support, maintenance and education of said minor child, husband agrees to and shall create an irrevocable trust with the Bank of America, San Rafel, California, as Trustee, for the property, higher education and training of the minor child, when the same may become feasible or desirable. In connection therewith, husband shall pay to the Bank of America, San Rafael, California, the sum of $50.00 per month * * * Williford. Rather, it appears to be her contention that it was her own out-of-pocket expenditures for child support in 1968 which created such basis. We have already rejected such position in , where we said: In our opinion this argument is without merit. Waldram's obligation to make the payments here involved was imposed on him by law, arose from his status as a father, and was defined by the divorce court; it was in no way contingent on any payments for support of the children made by petitioner. Therefore it cannot be said that such payments by petitioner were made for the acquisition of any right of action against Waldram. We are unable to see how petitioners could *308 have any cost or other basis with regard to the arrearages in such payments, or to see how any funds of theirs can be said to have created the debt here in question or to have constituted its cost. We here reaffirm the stance taken in As defined in section 1012, an item's basis is its cost, and we cannot see how petitioner's out-of-pocket expenditures in 1968 represented the "cost" to her of the support agreement. She had a right to receive child-support payments from John Williford in the amount of $3,000 per year. Whether she spent $1, or $10,000 to support her child because of Williford's defaults, she remained entitled to receive from him only $3,000 per year in support payments. Thus, her own out-of-pocket payments had really nothing to do with the rights she possessed under the support decree. Such payments close of such year. , affd. (C.A. 9, 1972); 5 Mertens, Law of Federal Income Taxation, sec. 30.12 p. 32-5; sec. 166(b). In the instant case, even assuming that the support agreement constituted a debt from Williford to petitioner, and even giving *309 effect to respondent's concession that whatever rights such agreement created became worthless during 1968, we can still allow petitioner no deduction for a bad debt loss because it is our finding that petitioner had no basis in such "debt." By virtue of the support agreement signed in 1964, petitioner became entitled to receive from Williford, her ex-spouse, together with other sums, $250 per month for the support of their minor child. Because Williford defaulted totally on such payments during 1968, petitioner used her own funds to provide such support, and she has claimed a $3,000 bad debt deduction, such sum representing the total amount of child-support payments which Williford was supposed to have made to petitioner during 1968. In asserting her right to a bad debt loss, petitioner does not claim, and of course such claim would have no foundation, that the actual signing of the support agreement created a basis for her in the sums receivable from neither furnished her a basis for a claim against Williford nor did such payments increase any rights she may already have possessed. It is for these reasons that we cannot deem her out-of-pocket expenditures to represent the cost *310 of the support agreement to her. [2]
In its per curiam affirmance of our Memorandum Opinion in , the Court of Appeals for the Ninth Circuit suggested, without indicating any type of definitive view, that expenditures like those incurred by petitioner in the instant case might be deductible as bad debt losses under those cases allowing deductions to the guarantor of a note when the debtor defaults. ( (C.A. 2, 1932), reversing . , or cases allowing bad debt losses to a taxpayer when he must pay materialmen's liens on his home after the builder defaults. ( .) *311 (C.A. 9, 1973), certiorari denied . [3] We think, however, that those cases are distinguishable, and that they do not, even by analogy, satisfy our concern with the basis problem which we have described above. For in both the guarantor and homeowner situations, such individuals, by virtue of their payments to third parties, acquire a right to pursue the defaulting party for an amount equivalent to what the taxpayer was required to pay to the third party. Thus, such payments can be clearly and easily deemed the cost of the debts--the losses from the worthlessness of which they are deducting--now owed them by the defaulting parties. Such relationship, as we have explained, simply cannot be seen in the instant situation. We thus reject petitioner's attempts to claim a bad debt deduction. The expenditure she incurred fits much more comfortably within the characterization of "expenses," or *312 "losses." However, when we view such expenditure in these terms, it is clear that it is nondeductible. Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, unless otherwise specified.↩
2. Two divisions of this Court have also followed the position we took in , as to the lack of basis in the support decree. , affirmed per curiam (C.A. 9, 1973), certiorari denied ; .↩
3. The Ninth Circuit also suggested that , might by analogy support the position we took as to basis in Swenson.↩ 487 F. 2d at 320.